2011 Ark. App. 781

**Joe BERRY and Beulah Berry, Appellants**

v.

**Neal MOON and Anna Moon, Appellees.**

**No. CA 11–637.**

Court of Appeals of Arkansas.

Dec. 14, 2011.

Rinda Pack Backer, Alma, for appellant.

Phillip J. Milligan, Fort Smith, for appellee.

ROBIN F. WYNNE, Judge.

Joe Berry and Beulah Berry appeal from an order of the circuit court finding that appellees, Neal Moon and Anna Moon, established entitlement to an easement by prescription over their property and an order of the trial court dismissing their counterclaim for trespass. We reverse and dismiss the order granting appellees an easement. We reverse and remand the order denying appellants' counterclaim for trespass.

The parties are neighbors in Crawford County. Appellees purchased their property in 1996. Appellants purchased their property in 2007. From the time that they purchased their property, appellees accessed the rear portion of their property by crossing over appellants' property using, for at least part of the way, a stretch of pavement that went down the side of appellants' property. The first year that appellants owned their property, they allowed appellees to access the rear portion of their property in this manner. In May 2008, appellants had a survey performed after which they fenced their property and denied appellees access.

On July 11, 2008, Neal Moon filed a petition for declaratory judgment in which he sought a declaration by the circuit court that an easement by prescription existed for his benefit upon the property of Joe Berry. On July 25, 2008, Joe Berry filed an answer, counterclaim, and prayer for proper joinder.[1] For his counterclaim, Berry asked that appellees be "restrained and enjoined" from trespassing on his property. On July 13, 2009, appellants filed a second answer and counterclaim. In the counterclaim, appellants again alleged that appellees had been trespassing on their property. Appellants also alleged that appellees had been throwing "materials" onto their property and leaving vehicles on the property that blocked the easement described in the deeds for ingress and egress to appellants' property.

At the hearing on appellees' petition, Michael Fairfield, who lived on appellants' property from 2002 to 2005, testified that the only way to get to the rear of appellees' property was via a driveway that goes down the left side of appellants' property. He also testified that he let appellees use the drive because that was the only way they could access that portion of their property. Fairfield stated that he believed that appellees had an express easement for that purpose.

Steve Meadors testified that his family developed the property that the parties live upon. He testified that the only way to access appellees' property by vehicle was to use the concrete driveway upon appellants' property. Meadors stated that the Moon house was built first and that one could access the rear of the Moon property before the Berry house was built, but after the Berry house was constructed, it was necessary to use the driveway. On cross-examination, Meadors testified that he did not know how often the driveway was used to access the property, nor did he know how far down the driveway went.

Neal Moon testified that, prior to purchasing his property, he had a conversation with the then-owner, in which she indicated that she accessed the rear of her property by going down beside the property appellants now own. Moon testified that there is an easement described in his deed and he thought the easement encompassed the concrete driveway, but he later discovered that it did not. Moon testified that, prior to appellants' purchase of their property, he continuously used the driveway on their property to access his property because it was the only method by which he could do so. According to Moon, he accessed his backyard once a week while the grass was growing and two or three other times when it was not. Moon stated that, as far as he knew, there was never any access to the back of his property other than the drive on appellants' property. He further testified that he had not looked into the possibility of putting a drive anywhere on his property to access his backyard because it looked as though it was impossible.

According to Moon, if he were not able to have an easement across appellants' property his backyard would grow up and become a "wasted field." Moon did admit that another neighbor might let him have access across his pasture, but he would have to build a bridge due to the presence of a small creek, which he claimed would be expensive. Moon admitted on cross-examination that there was no determined path to use once the concrete ended and that he did not use the same route every time to access his property. Moon stated

1. In response to Berry's prayer for proper joinder, Neal Moon filed an amended petition for declaratory judgment on July 6, 2009, in which he named his spouse, Anna Moon, and Joe Berry's spouse, Beulah Berry, as additional parties.

that there was not anything on appellants' property to indicate that he was crossing their property to access his own. There have been no improvements made to the area where Moon would cross appellants' property.

Ricky Hill, a registered land surveyor who surveyed appellants' property, testified that he did not see any sign that appellees had used appellants' property to access the back portion of their own, although he admitted on cross-examination that this could be because appellants barred appellees' access across their property for the preceding two years.

Joe Berry testified that he did not have any discussions with Neal Moon regarding Moon using part of his property prior to moving into his home. Berry allowed Moon to use the driveway for one summer. Then, according to Berry, appellants fenced off their property after having it surveyed, cutting off appellees' access to the drive. Berry testified that he told Moon that he was going to fence the property and Moon did not object, nor did he state that he had a right to use the property. Berry stated that there was not anything in his yard to indicate where appellees had been crossing it. Berry stated that appellees had been throwing limbs, leaves, and grass onto his property and testified that he was requesting that the court restrain them from doing so. Berry testified that he knew there was an easement across his property, but he did not know where it was located.

On March 1, 2010, the circuit court issued an order of easement in which it found that appellees have a prescriptive easement over appellants' property for the sole purpose of providing access to the lower portion of their property. The court did not address appellants' counterclaim. Appellants appealed to this court, and on February 2, 2011, this court dismissed the

appeal for lack of a final order due to the outstanding counterclaim. *See Berry v. Moon*, 2011 Ark. App. 78, 2011 WL 386971. On March 17, 2011, the circuit court entered an order in which it dismissed appellants' counterclaim. Appellants have now appealed to this court from the order of easement and the order dismissing their counterclaim.

█ We review equity cases de novo on the record but will not reverse a finding of the trial court unless it is clearly erroneous. *Slaton v. Slaton*, 336 Ark. 211, 983 S.W.2d 951 (1999). A finding is clearly erroneous, when, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been committed. *Id.*

█ The circuit court found that appellees established an easement by prescription. One asserting an easement by prescription must show by a preponderance of the evidence that one's use had been adverse to the true owner and under a claim of right for the statutory period. *Orr v. Orr*, 2009 Ark. App. 578, 2009 WL 2877634. Overt activity on the part of the user is necessary to make it clear to the owner of the property that an adverse use and claim are being asserted. *Id.* Some circumstance or act in addition to, or in connection with, the use which indicates that the use was not merely permissive is required to establish a right by prescription. *Id.*

We hold that the evidence presented at the hearing was not sufficient to satisfy the requirements for an easement by prescription. The testimony at the hearing revealed that appellees' crossing of the property was permissive. It does not appear to have ever ripened beyond that. According to the evidence, appellees never made any change to the property or took any affirmative steps that would have

placed a reasonable owner on notice that an easement across his property was being asserted. The finding by the circuit court that appellees established an easement by prescription was clearly erroneous.

In their brief, appellees assert that, even if an easement by prescription was not proven, either an easement by implication or an easement by necessity was proven. An easement by implication arises where, during unity of title, a landowner imposes an apparently permanent and obvious servitude on part of his property in favor of another part and where, at the time of a later severance of ownership, the servitude is in use and is reasonably necessary for the enjoyment of that part of the property favored by the servitude. *Manitowoc Remfg., Inc. v. Vocque*, 307 Ark. 271, 819 S.W.2d 275 (1991). In order for such an easement to be established, it must appear not only that the easement is obvious and apparently permanent but also that it is reasonably necessary for the enjoyment of the property. *Hanna v. Robinson*, 86 Ark.App. 180, 167 S.W.3d 166 (2004). The term "necessary" in this context means that there could be no other reasonable mode of enjoying the dominant tenement without the easement. *Id.* The necessity for the easement must have existed at the time of the severance. *Id.* Further, the apparently permanent nature of the easement must be in existence at the time of common ownership. *Id.*

The evidence does show that there was previously unity of title under the Meadors family. However, the evidence does not establish that the easement claimed was permanent, obvious, or necessary. The testimony reveals that the concrete drive in question ends at some point before appellees' backyard is reached. Neal Moon testified that he purposely never used the same route to reach his land. Thus the easement claimed was neither obvious nor permanent. Neal Moon also testified that there might be another route to his property, but he had not explored it because he had never been forced to do so. On this evidence, it cannot be said that the easement claimed was necessary. The evidence does not support a finding of an easement by implication.

The possibility of another route to appellees' backyard also serves to preclude the establishment of an easement by necessity. To establish an easement by necessity, a party must prove (1) that title to the tracts in question were once held by one person; (2) that unity of title was severed by conveyance of one of the tracts; and (3) that the easement is necessary in order for the owner of the dominant tenement to use his land, with the necessity existing both at the time of the severance of title and at the time the easement is exercised. *Hedger Bros. Cement & Materials, Inc. v. Stump*, 69 Ark.App. 219, 10 S.W.3d 926 (2000). The degree of necessity must be more than mere convenience. *R & T Properties, LLC v. Reyna*, 76 Ark. App. 198, 61 S.W.3d 229 (2001). Neal Moon himself testified that there was at least one other possible route that had not been investigated fully. At this point it cannot be said that the requested easement is the only method by which appellees can access their property, and, thus, they did not establish an easement by necessity.

Appellants also appeal from the order of the trial court denying their counterclaim for an order enjoining appellees from trespassing onto their property by leaving vehicles on the portion of the property over which appellees claimed an easement and by throwing "trash and other materials" onto appellants' property. It appears from our review of the transcript of the hearing held after the initial appeal was dismissed that the circuit court considered

the counterclaim to be tied to appellees' claim for an easement, dismissing the former because it granted the latter. As the order granting appellees an easement across appellants' property is hereby reversed and dismissed, we remand to the circuit court for it to enter an order on the counterclaim that is consistent with this court's opinion.

Reversed and dismissed in part; reversed and remanded in part.

ABRAMSON and BROWN, JJ., agree.